No. 22-55663

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

ANTHONY SANDERS et al
Plaintiffs-Appellants,

v.

COUNTY OF VENTURA
Defendants-Appellees.

On Appeal from the United States District Court
for the Central District of California,
The Honorable Michael W. Fitzgerald,
Case No.: 2:19-CV-06370-MWF-E

**PLAINTIFFS-APPELLANTS REPLY BRIEF**

David E. Mastagni, Bar No. 204244
Taylor Davies-Mahaffey, Bar No. 327673
**MASTAGNI HOLSTEDT, A.P.C.**
1912 I Street
Sacramento, CA 95811
Tel: 916.446.4692
Fax: 916.447.4614
*Attorneys for Plaintiffs-Appellants*
ANTHONY SANDERS, et al

# TABLE OF CONTENTS

I.  INTRODUCTION .........................................................................1

II. ARGUMENT..............................................................................5

A.  The Lower Court Erred in Ruling that the Determination that
    Defendant's Flexible Benefits Plan is "Bona Fide" Disposes of All
    Plaintiffs' Claims and Legal Theories....................................................5

B.  Defendant Violated the FLSA by Excluding the Opt-Out Fees from
    Plaintiffs' Regular Rate. ........................................................7

    1.  Defendant's Admission the Flexible Benefit Allowance is
        "Income" Confirms the Payments Must Be Included in
        Plaintiffs' Regular Rate Unless Subject to a Section 207(e)(1)-
        (8) Exclusion. ...........................................................8

    2.  Defendant's Treatment of the Flexible Benefit Allowance
        Confirms that it is a Wage. ...................................................10

    3.  The Opt-Out Fees are Not Benefit Contributions Excludable
        from the Regular Rate under 29 U.S.C. § 207(e)(4)................12

C.  Defendant Failed to Refute the Requirement to Calculate the Regular
    Rate Before the Opt-Out Fee Deduction...........................................15

D.  The Plain Language of 29 C.F.R. § 531.35 Refutes Defendant's Claim
    that the Flex Allowance is Beyond the Scope of the Prohibition on
    "Kickbacks.".......................................................................17

E.  Defendant Failed to Establish its Claim that the Opt-Out Fee is a
    Voluntary Deduction Permitted Under 29 C.F.R. § 531.40...............18

    1.  Plaintiffs Have Not Willingly and Voluntarily Assented to the
        Opt-Out Fee Deduction..........................................................18

    2.  Defendant Does Not Dispute that it Derives a Benefit from the
        Opt-Out Fee Deduction..........................................................21

F.    The District Court Erred by Granting Defendant's Summary Judgment on the Grounds the Flexible Benefits Plan was Bona Fide in Years Cash Payments Exceeded 20%. ...........................................................23

    1.    The Final Rule is a Permissible and Persuasive Interpretation of 29 U.S.C. § 207(e)(4)...............................................................24

    2.    The District Court Erred by Determining that Direct Payments Over 20% were "Incidental."....................................................27

III.    CONCLUSION................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Auer v. Robbins*,
  519 U.S. 452 (1997).....................................................................4, 24

*Ballaris v. Wacker Siltronic Corp.*,
  370 F.3d 901 (9th Cir. 2004) ...........................................................23

*Brunozzi v. Cable Communications, Inc.*,
  851 F.3d 990 (9th Cir. 2017) .............................................................8

*Carlino v. CHG Medical Staffing, Inc.*,
  No. 117CV01323DADBAKEPG, 2022 WL 5249439 (E.D. Cal., Oct. 6,
  2022) ..........................................................................................9, 11

*Condo v. Sysco Corp.*,
  1 F. 3d 599 (7th Cir. 1993) ...............................................................24

*County of Amador v. United States Department of the Interior*,
  872 F. 3d 1012 (9th Cir. 2017) .................................................. 24, 25

*Donovan v. Crisostomo*,
  689 F.2d 869 (9th Cir. 1982) ...........................................................23

*Flores v. City of San Gabriel*,
  824 F.3d 890 (9th Cir. 2016) ............................................... passim

*Hurst v. Youngelson*,
  No. 1:15-CV-03560, 2019 WL 12521475 (N.D. Ga. Dec. 26, 2019)...........22

*In re City of Redondo Beach FLSA Litigation*
  Case No. 217CV09097ODWSKX, 2019 WL 6310264 (C.D. Cal., Nov. 25,
  2019) ..........................................................................................28

*Kisor v. Wilkie*,
  139 S. Ct. 2400 (2019).....................................................................26

*Mayhue's Super Liquor Stores, Inc. v. Hodgson*,
  464 F.2d 1196 (5th Cir.1972) ...........................................................22

*Ramos-Barrientos v. Bland*,
  661 F.3d 587 (11th Cir. 2011) ...........................................................22

*Rubin v. Wal-Mart Stores, Inc.*,
  599 F.Supp.2d 1176 (2009) .......................................................9, 10

*Skidmore v. Swift & Co.,*
    323 U.S. 134 (1944)...................................................................... 4, 24, 27

*Walling v. Alaska Pac. Consol. Min. Co.,*
    152 F.2d 812 (9th Cir. 1945) .........................................................8

*Ward v. Costco Wholesale Corp.,*
    No. 208CV2013FMCFFMX, 2009 WL 10670191 (C.D. Cal. May 6, 2009)
    ......................................................................................................21

**Statutes**

29 U.S.C. § 207(e)(1)-(8).................................................................1, 8

29 U.S.C. § 207(e)(1), (3)(a), (5)-(7).................................................9

29 U.S.C. § 207(e)(4) .............................................................. passim

I.R.C. § 106 ......................................................................................9

I.R.C. § 125 ......................................................................................9

I.R.C. § 61 ............................................................................. 1, 7, 8, 9

**Regulations**

29 C.F.R. § 531.35 ................................................... 3, 5, 17, 22

29 C.F.R. § 531.37 ........................................................... 15, 16

29 C.F.R. § 531.40 ................................................................ passim

29 C.F.R. § 778.214 ...................................................................2, 13

29 C.F.R. § 778.215(a)(5) .............................................................14

29 C.F.R. § 778.304 ....................................................... 15, 16

29 C.F.R. § 778.305 ....................................................... 15, 16

29 C.F.R. § 778.315 ....................................................................23

**Other Authorities**

*DOL Issues H-2A Program FAB Regarding Voluntary Assignments of Wages,*
    *Employer Filing Tips, and Statistics,* 89 Interp. Releases 22 1076 (2012)...19

Regular Rate Under the Fair Labor Standards Act ("Final Rule"), 84 Fed. Reg. 68736-01, 68761 (Dec. 16, 2019) .................................................. 3, 14, 25, 26

U.S. Dep't of Labor, Wage & Hour Div., *Field Operations Handbook* § 32j08(c) (2016) ............................................................................................. 15, 16, 19

U.S. Dep't of Labor, Wage & Hour Div., *General Guidance on Voluntary Assignments of Wages Under the H-2a Program 2012-3* (2012) .......... 19, 21

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2001-7, 2001 WL1558768 (Feb. 16, 2001) .......................................................... 15, 16, 19

U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter WH-239, 1973 WL 36845, at *1 (Oct. 1, 1973) ............................................................................16

## I.    INTRODUCTION

Defendant/Appellee's Answering Brief ("Answer") misapprehends Plaintiffs/Appellants' legal theories, and instead relies on the district court's erroneous ruling that all "issues rise and fall with the determination of whether or not the plan is bona fide."  (1-ER-10.)  In attempting to tether all Plaintiffs' claims and legal theories to status of the plan, Defendant fails to refute Plaintiffs' core argument that the opt-out fee is paid to Plaintiffs as wages and cannot be excluded from their regular rate of pay.

Defendant's effort to distinguish "income" from "wages" is specious. Income must be included in the regular rate, unless Defendant can establish an entitlement to an exclusion in 29 U.S.C. § 207(e)(1)-(8).  Whether or not income is taxable under the IRS code is immaterial to the applicability of these exclusions. Defendant concedes that the opt-out fee is first paid to Plaintiffs as gross income within the meaning of I.R.C. § 61 and reflected in Plaintiffs' paystubs as earnings. (Dkt. 18, pp. 28-29; 2-ER-090; 2-ER-119; 2-ER-130.) As all income is presumptively included in the regular rate, Defendant must prove the payments are subject to an FLSA exemption. Defendant's reliance on 29 U.S.C. § 207(e)(4)'s bona fide requirement as exempting the Flexible Benefit Allowance ("Allowance" or "Flex Allowance") payments is misplaced. The § 207(e)(4) exclusion relates to

an employee's receipt of benefit contributions, not involuntary deductions transferred to other employees.

*Flores* unequivocally held that direct payments in lieu of health insurance must be included in the regular rate, regardless of whether the plan is bona fide. *Flores v. City of San Gabriel,* 824 F.3d 890, 901 (9th Cir. 2016). Rejecting a similar claim that "payments fall within the ambit of § 207(e)(4) ... because the payments "generally" meet the requirements of that subsection," the court in *Flores*, explained "[s]ection 207(e)(4) deals with contributions by the employer, not payments to the employee." *Id.* The Ninth Circuit declined to expand the § 207(e)(4) exemption beyond the clear confines of the statute. Thus, even if the overall plan is deemed bona fide, Flexible Benefit Allowance "income" earned by opt-out Plaintiffs cannot be excluded. As Defendant cannot dispute that opt-out Plaintiffs do not purchase insurance with their Allowance, and that the opt-out fee is a dollar-for-dollar deduction from the employee paid to their union, it must be included in the regular rate on a pre-deduction basis. 29 C.F.R. § 778.214.

Defendant's defense of its kick-back practice through the opt-out fee is predicated entirely on the specious assertion the deduction is "voluntary." Here, Defendant unsuccessfully attempts to conflate the voluntary nature of Plaintiffs' decision to waive health insurance with Defendant's involuntary deduction of the fee. The voluntary nature of Plaintiffs' election to waive health coverage, rather

than purchase health insurance with their Flex Allowance has no bearing on the lawfulness of the opt-out fee deduction or its exclusion from the regular rate of pay. While hypocritically castigating Plaintiffs seeking a "windfall," Defendant unilaterally kicks back the majority of Plaintiffs' Flex Allowance earnings in order to pay their unions a lump sum subsidy to reduce other employees' benefit costs. (*See* Dkt. 18, p. 32.) The opt-out fee is not collectively bargaining or authorized in the labor contracts, but rather unilaterally set and extracted by Defendant.

Moreover, Defendant cannot dispute that the opt-out fee deductions are unlawful kickbacks because they are for Defendant's benefit. Defendant ultimately benefits from using the opt-out fee deduction to reduce other employees' benefit costs, thereby requiring Plaintiffs to subsidize Defendant's labor costs. (*See* Dkt. 18, pp. 7-10.) Thus, the Court does not even need to reach the issue of whether the deductions are voluntary to determine that they are an unlawful kickback under 29 C.F.R. § 531.35.

Finally, the district court erred in holding that the plan was bona fide during periods the cash payments exceeded 20%. (1-ER-09–10.) The DOL's Final Rule adopting the 20% threshold for cash payments is, at a minimum, persuasive guidance that this Court should follow. *See* Regular Rate Under the Fair Labor Standards Act ("Final Rule"), 84 Fed. Reg. 68736-01, 68761 (Dec. 16, 2019) (to be codified at 29 C.F.R. pts. 548, 778). Defendant argues at length that the DOL's

bona fide threshold should not be afforded *Auer v. Robbins*, 519 U.S. 452, 461 (1997) deference, yet provides no persuasive argument as to why the DOL's reconsideration of the 20% threshold post-*Flores* is incorrect. Minimally, the DOL's guidance should be followed as persuasive under the factors set forth in *Skidmore v. Swift & Co.,* 323 U.S. 134 (1944). Employers and employees need bright line guidance for determining the bona fide status of a plan. Defendant advocates for a determination that in the Ninth Circuit, and only the Ninth Circuit, cash payments of up to 40% may maintain a bona fide plan status. (Dkt. 18, p. 17.) This Circuit should clarify the ambiguity left unanswered by *Flores* and adopt the 20% threshold reconsidered and affirmed by the DOL. Even under a fair reading, Defendant still bears the burden of establishing an entitlement to an exclusion. Thus, Defendant should be denied summary adjudication that the relevant plans were bona fide during the years cash-in-lieu payments exceed 20% of the plan costs.

Accordingly, this Court should reverse the district court's grant of Defendant's Motion for Summary Judgment ("MSJ"), order Plaintiffs' Motion for Summary Adjudication ("MSA") be granted, and remand any remaining issues to the district court.

///

///

4

## II.    ARGUMENT

## A. <u>The Lower Court Erred in Ruling that the Determination that Defendant's Flexible Benefits Plan is "Bona Fide" Disposes of All Plaintiffs' Claims and Legal Theories.</u>

The lower court failed to address the gravamen of Plaintiffs' claims, instead erroneously holding that "the issues rise and fall with the determination of whether or not the plan is bona fide." (1-ER-10.) Defendant conclusory agrees, arguing "if the Flexible Benefits Program contributions are excluded from the regular rate, Appellants have been paid all of the FLSA overtime they are owed." (Dkt. 18, p. 19.)  To the contrary, only the exclusion of the portions of the Flex Allowance used to actually purchase insurance rise and fall with the determination of whether or not the plan is bona fide. Notwithstanding that tertiary claim, Plaintiffs' MSA sought adjudication of their core claims challenging the unlawfulness of the opt-out fee deduction.  Plaintiffs challenged this unlawful deduction through FLSA overtime claims based on this Circuit's maxim that overtime cannot be deemed as properly paid until all non-overtime pay owed is paid.  Because the opt-out fee was improperly deducted, Defendants cannot satisfy its overtime obligations unless the fee is refunded, regardless of whether the plan is bona fide.  The bona fide issue is irrelevant to these claims under 29 C.F.R. § 531.35. Thus, the district court erred in ruling that "because the payments were, at most, incidental to the operation of a

bona fide plan, the payments are not a kickback." (1-ER-10.)

Additionally, Plaintiffs' claims that Defendant failed to properly calculate the overtime rate on a pre-deduction basis are not dependent upon bona fide status of the plan. Even if the plan is ultimately deemed bona fide, *Flores* requires that the Allowance payments to Plaintiffs opting out of any insurance contributions must be included in their regular rate of pay, because the payments did not come from a third-party intermediary. Whether or not the calculation of Plaintiffs' regular rate on a post-deduction basis violated the FLSA is a separate and distinct legal question not dependent upon a finding that the plans were bona fide.

Thirdly, the bona fide status of the plan is immaterial to the treatment of direct Allowance payments to Plaintiffs who waived all health insurance. Defendant does not contest that it paid the full Flex Allowance to Plaintiffs directly. (Dkt. 18, pp. 28-29.) "The City's cash-in-lieu of benefits payments are not made to a trustee or third party, and therefore those payments do not meet the requirements of § 207(e)(4)." *Flores,* 824 F.3d at 901. *Flores'* mandate was clear, the direct Allowance payments to opt-out Plaintiffs cannot be excluded based on claims that the plan was bona fide. The subsequent involuntary deduction and transfer of the opt-out fee to offset other employees' health care costs cannot escape the reach of *Flores*.

Plaintiffs sought adjudication of FLSA overtime underpayments under these

three separate and independent legal theories which were not predicated upon a determination the plan was not bona fide. Tellingly, Plaintiffs did not even seek summary adjudication as to whether Defendant's plans were bona fide, and acknowledged the plans were bona fide during some relevant time periods. (*See* 2-ER-205.) As Defendant's Answer fails to squarely address these points, its conclusory assertions cannot resuscitate the trial court's flawed reasoning. Thus, the district court erred in holding that a finding that the plans were bona fide obviated all claims raised in Plaintiffs' MSA.

## B. <u>Defendant Violated the FLSA by Excluding the Opt-Out Fees from Plaintiffs' Regular Rate.</u>

Disregarding this Circuit's precedent mandating the inclusion of direct employer payments in lieu of benefit contributions, the trial court erroneously ruled that "cash-in-lieu payments were properly exempted under § 207(e)(4)" as incidental to a bona fide plan. (1-ER-10.) Defendant's admission that the opt-out fee is paid to Plaintiffs as gross income within the definition in of I.R.C. § 61 and reflected as earnings in Plaintiffs' paystubs before being deducted is dispositive. (Dkt. 18, pp. 28-29; 2-ER-089; 3-ER-329–334; 2-ER-119; 2-ER-130.) *Flores* bars exclusion of these direct payments from the regular rate of pay.

**1. Defendant's Admission the Flexible Benefit Allowance is "Income" Confirms the Payments Must Be Included in Plaintiffs' Regular Rate Unless Subject to a Section 207(e)(1)-(8) Exclusion.**

Ironically, Defendant's admission the opt-out fee is earned as gross income under I.R.C. § 61 highlights the error committed by the trial court. Defendant relies on the fact that some items included in "gross income" under I.R.C. § 61 are excludable from the regular rate to mean that the Flexible Benefit Allowance is also excludable. (Dkt. 18, pp. 28-29.) This is a non sequitur. The Ninth Circuit has consistently held that all payments forming part of an employee's "normal weekly *income*" must presumptively be included in the regular rate, unless Defendant can establish an entitlement to an exclusion. *Brunozzi v. Cable Communications, Inc.*, 851 F.3d 990, 996 (9th Cir. 2017) (emphasis added) (citing *Walling v. Alaska Pac. Consol. Min. Co.,* 152 F.2d 812, 815 (9th Cir. 1945)). Defendant's characterization of the payments as income under I.R.C. § 61 is no defense to the includability of the earnings. Rather, Defendant's admission that the full Allowance is earned as income confirms the Allowance is presumptively included in the regular rate unless Defendant can independently establish an entitlement to an exemption under § 207(e)(1)-(8).

Defendant claims, without support, that its paystub designations are irrelevant. (Dkt. 18, pp. 28-29.) However, the fact that payments appear as line

items on employees' paystubs have been found to be an "indicator," suggesting those items are renumeration to be included in the employees' regular rate. *Carlino v. CHG Medical Staffing, Inc.,* No. 117CV01323DADBAKEPG, 2022 WL 5249439, at *2 (E.D. Cal., Oct. 6, 2022). Defendant's Answer fails to meaningfully address this point, instead superficially citing to an "FAQ" on the DOL's website stating that the FLSA does not require employers to provide paystubs. (Dkt. 18, p. 28, fn. 3.)

Moreover, Defendant's claim that the full Allowance is gross income pursuant to § 61 only serves to establish that it is a wage and not a benefit. Employer contributions to a health plan are expressly excluded from the definition of gross income. I.R.C. § 106. This is true even if made through a cafeteria plan. I.R.C. § 125. However, Defendant admits it considers the Allowance gross income, indicating that it is not "employer provided coverage under an accident or health plan," but rather wages paid to the employee. *See* I.R.C. § 106; Dkt. 18, pp. 28-29.

*Rubin v. Wal-Mart Stores, Inc*., 599 F.Supp.2d 1176 (2009), which is cited by Defendant, actually supports Plaintiffs' position that earnings must be included in the regular rate unless and until the employer identifies an exclusion. In *Rubin* the court permitted the exclusion of premium pay required under California law for working without a meal break because the income could be excluded under 29 U.S.C. § 207(e)(1), (3)(a), (5)-(7) as a "payment at premium wage rates,

discretionary bonuses, gifts, or overtime pay." *Id.* at 1178. Here, as discussed *infra,* Defendant cannot pigeonhole the Allowance paid to opt-out Plaintiffs into the § 207(e)(4) exemption for employer contributions for health insurance. Because, as Defendant readily admits, the full Allowance is included in Plaintiffs' income, and Defendant cannot prove an exclusion applicable to opt-out Plaintiffs, the opt-out fee must be included in their regular rate.

### 2. Defendant's Treatment of the Flexible Benefit Allowance Confirms that it is a Wage.

Both on paper and in practice, the County does not merely pay Plaintiffs the difference between the Allowance and the insurance or opt-out fee. The full amount of the Allowance is recorded as "earnings," on Plaintiffs' paystubs. (2-ER-255; 3-ER-329–334; 3-ER-396–399; 3-ER-400–401; 3-ER-402–403; 3-ER-404–405; 2-ER-255; 3-ER-329–334, 336–337; 3-ER-450; 3-ER-496; 3-ER-529.) Tellingly, the opt-out fee is listed as a separate "Deduction" on their paystubs. (2-ER-257; 3-ER-329–334; 3-ER-379–380; 3-ER-413–415; 2-ER-102; 3-ER-379–380; 3-ER-396–399; 3-ER-400–401; 3-ER-402–403; 3-ER-404–405; 3-ER-450; 3-ER-457; 3-ER-529; 3-ER-535.) The full Allowance is comingled with all other earnings and deductions are taken from aggregate earnings. (3-ER-539; 4-ER-665–670; 3-ER-396–399; 3-ER-400–401; 3-ER-402–403; 3-ER-404–405; 2-ER-255; 3-ER-329–334, 336–337 3-ER-450; 3-ER-496; 3-ER-529; 2-ER-258; 3-ER-307–

310.) Any dollars deducted as part of the opt-out fee remain as earnings. (2-ER-258; 3-ER-305–308; 4-ER-700; 5-ER-0890, 5-ER-0916; 5-ER-0980–0985; 5-ER-0987–0988; 5-ER-0891; 5-ER-0915–0916; 5-ER-0904; 5-ER-0921–0922; *See Carlino,* No. 117CV01323DADBAKEPG, 2022 WL 5249439, at *2.)

This remains true regardless of whether the employee opts-out of insurance, chooses an insurance plan that costs more than the Allowance, or chooses a plan that costs less than the Allowance. For example, Plaintiff Shawn Holzberger chose the lowest cost DSA plan in 2019. (3-ER-489; 3-ER-521; 3-ER-403; 3-ER-360.) He was paid the full Allowance as "earnings," the cost of the plan was deducted as a "deduction," and he received the remainder in cash. (*Id*.) The same is true for Plaintiff Anthony Sanders who opted-out of DSA coverage in 2018. (3-ER-529; 5-ER-855.) He was paid full Allowance as "earnings," the opt-out fee was deducted as a "deduction," and he received the remainder in cash. (3-ER-529; 3-ER-533; 5-ER-856.) Similarly, Nick Odenath chose a plan that cost more than the Allowance in 2019. (3-ER-488–489; 3-ER-519; 3-ER-401.) He was paid the full Allowance as "earnings," and the full cost of the plan, which exceeded the amount of the Allowance, was deducted as a "deduction." (*Id*.)

Thus, as confirmed by Plaintiffs' paystubs and Defendant's practices, the Allowance constitutes a monetary payment that can be used to purchase health benefits, but it is not a benefit in and of itself. The Flexible Benefit Allowance is

not a fictitious credit, but rather real dollars that are either spent on insurance, deducted and paid in cash to the union, or received in cash by the employee.

Despite this evidence, Defendant continues to assert that the Allowance is not a wage. (Dkt. 18, p. 29.) Defendant essentially asks the Court to ignore its payroll practices because it could have set up its Flexible Benefit Plan differently to only pay opt-out employees the difference between the Allowance and the opt-out fee. This ignores the crucial admission that opt-out Plaintiffs receive the full Allowance as income before it is deducted, and they never use the Allowance to purchase health insurance.

### 3. The Opt-Out Fees are Not Benefit Contributions Excludable from the Regular Rate under 29 U.S.C. § 207(e)(4).

Seeking to avoid the undisputed fact that Plaintiffs earn the opt-out fee amounts as income before they are deducted, Defendant's Answer seeks to miscast Plaintiffs' argument as a dispute over whether the bona fide analysis should focus on the plan as a whole or the choices of the individual employee. (Dkt. 18, p. 26-27.) In so doing, the Answer seeks to conflate the separate dispute over the plan status with the requirement that the regular rate is calculated on an individual basis. To the contrary, the salient point is that the involuntary deduction from an individual Plaintiff is wage theft, not an employer contribution towards benefits for that employee. This fact remains true regardless of whether the plan is bona fide.

Even under a bona fide plan, the § 207(e)(4) exclusion requires an individual employee to receive benefit contributions in order to exclude earned income from their regular rate. Because individual Plaintiffs opting out do not receive insurance benefits from the opt-out fee, the deduction is not excludable under § 207(e)(4). Defendant's practice of involuntarily deducting this portion of Plaintiffs' income after its earned and then transferring the monies to subsidize other employee benefit expenses does not fall within the ambit of the § 207(e)(4) exclusion.

The exemption articulated in 29 U.S.C. § 207(e)(4) permits the exclusion of "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." "If the contribution is not made as provided in § 7(e)(4) *or* if the plan does not qualify as a bona fide benefit plan under that section, the contribution is treated the same as any bonus payment which is part of the regular rate of pay." 29 C.F.R. § 778.214 (emphasis added). The statutory use of the conjunctive "or" signifies that the opt-out fee must be included in the regular rate if the deduction does not satisfy the requirements of § 207(e)(4), regardless of the plan status[1].

---

[1] Plaintiffs agree with Defendant that courts must look at the "plan as a whole" to determine if it is bona fide, but this point is immaterial.

It is settled law in this Circuit that payments made in lieu of health care benefits do not fall under the § 207(e)(4) exemption and must be included in employees' regular rate of pay. *Flores*, 824 F. 3d at 896. The Ninth Circuit explained, "[b]ecause the City pays the unused benefits directly to its employees and not 'to a trustee or third person,' its cash-in-lieu of benefits payments cannot be excluded under § 207(e)(4)." *Id.* at 901. The DOL has affirmed *Flores* and "disagree[ed] with commenters requesting that cash payments in-lieu of plan participation also may be excluded from the regular rate under § 7(e)(4)." Final Rule, 84 Fed. Reg. at 68761. Defendant's admission that Plaintiffs who opted out of receiving health benefits were paid the full Allowance as income is dispositive. Under *Flores*, the full Allowance must be included.

Further, 29 C.F.R. § 778.215(a)(5) states that in order to qualify for a § 207(e)(4) exemption, a plan "must not give an employee the right to assign his benefits under the plan." Under Defendant's novel theory that the opt-out fee is a benefit contribution to other employees, the opt-out fee would constitute a prohibited assignment. This Circuit should reject Defendant's attempt to extend the exemption to include involuntary deductions used to subsidize other employees' benefit costs. *Flores* made clear that courts "are not at liberty to add exceptions to the clear requirements set forth in the statute for payments that

14

'generally' satisfy the requirements of that provision." *Flores*, 824 F. 3d at 901.Thus, the opt-out fee payments cannot be excluded under § 207(e)(4).

## C. Defendant Failed to Refute the Requirement to Calculate the Regular Rate Before the Opt-Out Fee Deduction.

Defendant misconstrues the requirement of 29 C.F.R. § 531.37 to calculate the regular rate on a pre-deduction basis as "inapplicable" to the deduction of the opt-out fee. (*See* Dkt. 18, pp. 30-31.)  Defendant's effort to circumvent the FLSA's maxim to calculate the regular rate before taking deductions are unavailing. Regardless of whether the deduction of the opt-out fee from Plaintiffs' straight time wages was permissible, Plaintiffs' regular rate must still be calculated *before the deduction.* 29 C.F.R. §§ 531.37, 778.304, 778.305; U.S. Dep't of Labor, Wage & Hour Div., *Field Operations Handbook* § 32j08(c) (2016), https://www.dol.gov/agencies/whd/field-operations-handbook/Chapter-32#B32j08 ("FOH").

Defendant's claim that 29 C.F.R. § 531.37 applies only to bona fide 3(m) deductions for "facilities" is simply incorrect. Section 531.37 specifically dictates how deductions are to be made for *both* non 3(m) and 3(m) items. The DOL has affirmed this interpretation of its regulation in a number of Opinion Letters. U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter FLSA 2001-7, 2001 WL1558768, at *3 (Feb. 16, 2001)  ("Regulations, 29 CFR §531.37 contains our

interpretations on deductions from wages for non-3(m) items in overtime workweeks."); U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter WH-239, 1973 WL 36845, at *1 (Oct. 1, 1973) (discussing the application of § 531.37 to deductions intended to repay cash advances.)

Moreover, even setting aside Defendant's erroneous interpretation of § 531.37, it is undisputed that where deductions are made from an employee's income, the regular rate is calculated on a pre-deduction basis. 29 C.F.R. § 778.304 defines the term "deduction" to include various reductions in pay, including reductions for union dues, taxes, and wage garnishments. It goes on to explain, "where such deductions are made, the employee's 'regular rate' is the same as it would have been if the occasion for the deduction had not arisen." 29 C.F.R. § 778.305 also articulates that the regular rate for an employee whose income is subject to deductions is "determined by dividing his total compensation (except statutory exclusions) before deductions by the total hours worked in the workweek." *See also* 2001 Opinion Letter, 2001 WL1558768; 1973 Opinion Letter, 1973 WL 36845; FOH § 32j08(c).

In short, the DOL regulations and guidance are clear, the regular rate is calculated on a pre-deduction basis. By Defendant's own admission the full Allowance is gross income and the opt-out fee is a deduction from that income, the FLSA requires that opt-out Plaintiffs' regular rate must be calculated based on the

16

pre-deduction amount. (*See* Dkt. 18, pp. 28-29.)

## D. __The Plain Language of 29 C.F.R. § 531.35 Refutes Defendant's Claim that the Flex Allowance is Beyond the Scope of the Prohibition on "Kickbacks."__

Conjuring artificial distinctions between income, earnings, and wages, Defendant speciously asserts that the Flex Allowance is not a wage and therefore cannot be a kickback. (Dkt. 18, p. 29-30.) Whether characterized as income or wages, the full Allowance is money paid to opt-out Plaintiffs, and then deducted and transferred to their respective unions. (3-ER-541–542; 4-ER-661–664; 4-ER-562–563; 4-ER-738, 745–751; 4-ER-800; 4-ER-829; 3-ER-542; 4-ER-562–563; 4-ER-732–734; 4-ER-800; 4-ER-829; 2-ER-257; 3-ER-450; 3-ER-496; 2-ER-257–258; 3-ER-450; 3-ER-496.) In fact, § 531.35 plainly states the Regulation applies, "whether the 'kick-back' is made in cash or in other than cash." The district court erred in holding "the payments are not a kickback" by relying exclusively on its determination that the payments were "incidental to the operation of a bona fide plan." (1-ER-10.)

Furthermore, Defendant argues that the opt-out fee is a proper deduction rather than an unlawful kickback because it is "voluntary." (Dkt. 18, p. 31.) First, Defendant has not met their burden of proving the deduction is voluntary. Furthermore, even assuming the opt-out fee is voluntary, it is not permitted by 29 C.F.R. § 531.40 because Defendant directly benefits from the deduction.

**E. Defendant Failed to Establish its Claim that the Opt-Out Fee is a Voluntary Deduction Permitted Under 29 C.F.R. § 531.40.**

29 C.F.R. § 531.40 provides an exception to the rule that wages be paid free and clear by permitting "voluntary" deductions to be paid to a third party at the employee's direction only so long as "neither the employer nor any person acting in his behalf or interest, directly or indirectly, derives any profit or benefit from the transaction" and the arrangement was not intended to "evade or circumvent" the requirements of the FLSA.

Amazingly, Defendant argues that because Plaintiffs voluntarily opt out of health insurance, they also voluntarily agreed to the deduction of the opt-out fee. (*See* Dkt. 18, p. 31.) Plaintiffs did not have a meaningful opportunity or independent choice to refuse or decline the deduction. The only evidence cited by Defendant as evidence of the voluntary election is the enrollment form which merely contains an opt out box next to offered health plans, and does not even include the word "fee" or "deduction." (*Id.*; 2-ER-135–174.) Moreover, Defendant cannot satisfy any of the requirements of 29 C.F.R. § 531.40 because Defendant derives a clear benefit from the deduction.

**1. Plaintiffs Have Not Willingly and Voluntarily Assented to the Opt-Out Fee Deduction.**

In order for the opt-out fee to be a "bona fide" *voluntary* deduction

18

permittable under 29 C.F.R. § 531.40, it must based upon a "prior agreement or understanding between the employer and employee before the work [was] performed" (FOH § 32j08(b)), and the employee must "affirmatively agree or dissent" (2001 Opinion Letter, 2001 WL 1558768, at *3) to the deduction. *See also* FOH § 32j08(d). "While the employee's assent to the policy may be written or unwritten, the employer bears the burden of proof that an employee has agreed to the deduction policy." FOH § 32j08(d); *see also* 2001 Opinion Letter, 2001 WL 1558768, at *3. "[I]n order to be a truly voluntary deduction, the employee must have *a meaningful opportunity and an independent choice to refuse or decline the deduction*, as well as to cease participation at any time (consistent with administrative practicability)." U.S. Dep't of Labor, Wage & Hour Div., *General Guidance on Voluntary Assignments of Wages Under the H-2a Program 2012-3* (2012), https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/fab2012_3.pdf; *see also DOL Issues H-2A Program FAB Regarding Voluntary Assignments of Wages, Employer Filing Tips, and Statistics,* 89 Interp. Releases 22 1076 (2012).

While Plaintiffs can choose whether to enroll in a plan or opt-out, they do not have any discretion to agree to or decline the opt-out fee deduction. The deduction is involuntary and mandated by Defendant for all employees who choose to opt-out of health insurance. (5-ER-891; 5-ER-915–916.) Plaintiffs also have no say over the amount of the deduction as the County determines the amount based

on its actuarial analysis. (5-ER-891; 3-ER-315; 5-ER-916–917.)

Defendant also attempts to argue that by checking a box on the medical enrollment form, Plaintiffs are voluntarily assenting to the deduction. (Dkt. 18, p. 31.)  However, the enrollment form contains no disclosure of a deduction, nor authorization for a deduction.  For example, the 2019 enrollment form contains a box under other boxes associated with various insurance plans, which states "Medical Plan Opt Out – must submit Opt Out Certification Form with proof of eligibility ($282.73/biweekly)." (2-ER-147.) The information after the opt out box is the same for all relevant years, except the listed dollar amount. (2-ER-135–161; 2-ER-163–174.) The form does not identify the dollar amount as the opt-out fee and contains no explanation that the amount listed is what will be deducted from employees' paychecks. As the amount of the deduction taken nearly matches the entire Flex Allowance payment, the most likely inference would be that the listed amount is the amount of cash employees will receive, not a deduction they will be charged.

Even if the enrollment form clearly disclosed the deduction of the opt-out fee, the DOL has held the signing of a document stating that an employee has agreed to pay a fee or have a particular voluntary assignment of wages does establish that the fee or the assignment is voluntary. U.S. Dep't of Labor, *General Guidance on Voluntary Assignments of Wages Under the H-2a Program 2012-3*,

*supra*. Here, Flex Allowance was not paid free and clear, Plaintiffs did not request the deduction, they did not have an independent choice to decline the deduction, and they could not designate the amount of or cease the deduction. Thus, Defendant has not met their burden of proving that Plaintiffs have voluntarily assented to the opt-out fee.

**2. Defendant Does Not Dispute that it Derives a Benefit from the Opt-Out Fee Deduction.**

Because Defendant does not contest that it derives a clear benefit from deducting the opt-out fee, the deduction is prohibited by 29 C.F.R. § 531.40. (Dkt. 18, pp. 7-10; 5-ER-0869–0870; 5-ER-0891–0893; 4-ER-652; 4-ER-610–615; 4-ER-625; 4-ER-626; 4-ER-650–651; 5-ER-0916, 0918; 5-ER-0980–0985.) Thus, the opt-out fee does not qualify as a permitted deduction, regardless of whether it was actually voluntary. (*See* Dkt. 18, pp. 31-32.) Defendant's inability to refute the efficacy of *Ward v. Costco Wholesale Corp.,* No. 208CV2013FMCFFMX, 2009 WL 10670191 (C.D. Cal. May 6, 2009) is revealing. There, without even addressing voluntariness, the court found that the deduction of the employee's Costco credit card balance from her wages could not be considered a proper deduction under § 531.40 because the employer benefitted from the deduction. *Id.* at *4-*5.

Defendant benefits from deducting the opt-out fee by using the monies to fund other employees' benefits, including cash back payments, through a premium subsidy paid to the union for Defendant's benefit. Defendant admits that the opt-out fee is charged "to employees who opt-out of Defendant's medical plan, to be used for the benefit of other County employees who use Defendant's medical plan." (5-ER-0869–0870; 5-ER-0891; 4-ER-652; 4-ER-610–615; 4-ER-625; 4-ER-626.) Without the kickbacks from the opt-out fee, Defendant would have to contribute more to the Flexible Benefit Allowance or subject its other employees to higher out-of-pocket costs. (Dkt. 18, pp. 7-9; 5-ER-0870; 5-ER-0893; 4-ER-650–651; 5-ER-0916, 0918; 5-ER-0980–0985.) Defendant gains a competitive advantage in the labor market by offering benefits ultimately subsidized by opt-out employees.

Similarly, Defendant could not challenge Plaintiffs' authorities holding Section 531.35 "prohibits any arrangement that tends to shift part of the employer's business expense to the employees." *Ramos-Barrientos v. Bland*, 661 F.3d 587, 594 (11th Cir. 2011) (quoting *Mayhue's Super Liquor Stores, Inc. v. Hodgson*, 464 F.2d 1196, 1199 (5th Cir.1972)); *see also Hurst v. Youngelson*, No. 1:15-CV-03560, 2019 WL 12521475, at *4 (N.D. Ga. Dec. 26, 2019). Thus, even assuming that the opt-out fee is voluntary, it cannot qualify as a permitted deduction under 29 C.F.R. § 531.40 because it is for the benefit of Defendant.

The opt-out fee constitutes an unlawful kickback, and thus Defendant cannot satisfy its FLSA overtime obligations in any work period Plaintiffs were forced to kickback an opt-out fee. 29 C.F.R. § 778.315; *Donovan v. Crisostomo,* 689 F.2d 869, 876, fn 13 (9th Cir. 1982)*; Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901, 914 (9th Cir. 2004).

## F. <u>The District Court Erred by Granting Defendant's Summary Judgment on the Grounds the Flexible Benefits Plan was Bona Fide in Years Cash Payments Exceeded 20%.</u>

While only a subset of Plaintiffs' claims are dependent on whether Defendant's Flexible Benefits Plan is bona fide, the district court erred in disregarding the DOL's guidance and finding that the plans were bona fide in the years wherein the cash amounts exceeded 20%. (1-ER-09–10.) Without any limiting principle, Defendant advocates for this Circuit to again reject the DOL's new affirmation of the 20% threshold, even after post-*Flores* public comment and consideration of the decision. (Dkt. 18, p. 23.) Defendant laments the rigidness of a bright line threshold, but has no regard for the other end of such a slippery slope, which Defendant argues could permit cash payments up to 40%. (Dkt. 18, pp. 17, 23.) This appeal affords this Circuit the opportunity to provide employers and employees in this Circuit clear guidance on the bona fide threshold, and provide uniform application of these definitions nationally.

23

Defendant provides no authority as to why this Circuit should disregard the 20% threshold newly adopted by DOL, instead merely asserting that the DOL's Final Rule is not entitled to *Auer* deference. Regardless, minimally, the DOL's guidance is a persuasive and reasonable interpretation of the term "incidental" and the Court should adopt this interpretation. *See Skidmore.,* 323 U.S. at134.

1.      **The Final Rule is a Permissible and Persuasive Interpretation of 29 U.S.C. § 207(e)(4).**

Even if the Court finds the Final Rule is not entitled to *Auer* deference, it is entitled to deference under *Skidmore.* Congress delegated to the Secretary of Labor the power to interpret the FLSA. *Condo v. Sysco Corp*., 1 F. 3d 599, 604-05 (7th Cir. 1993), citing *Skidmore,* 323 U.S. at 137-38.  Under *Skidmore*, "the rulings, interpretations and opinions of [an agency], while not controlling on the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore*, 323 U.S. at 140. As the Ninth Circuit recently opined, the proper amount of influence to afford an agency interpretation under *Skidmore* will "vary with circumstances." *County of Amador v. United States Department of the Interior*, 872 F. 3d 1012, 1025 (9th Cir. 2017) (citation omitted). It depends on "a variety of factors," such as the thoroughness and validity of the agency's

reasoning, the consistency of the agency's interpretation, the formality of the agency's action, and the agency's relative expertise. *Id.* (citations omitted).

Here, these factors weigh in favor of giving the Final Rule great respect. The DOL has been thorough in its consideration of the issue, submitted the proposed rule to a comment period, and explained its reasoning in great detail. Here, the DOL adopted the 20% threshold after notice and commentary from employer stakeholders advocating to expand the § 207(e)(4) exclusion to for cash-in-lieu of insurance of benefits. *Id.* at 68761. The interpretation here was issued after months of commentary and consideration of employer-side stakeholders to broaden the exemption. In also rejecting those commentators' suggestions, the DOL explained that exclusion for benefit contributions "cannot be wages in another guise." Final Rule, 84 Fed. Reg. at 68761. The DOL explained:

> Cash payments in lieu of medical benefits in many cases function essentially as wage supplements. Even though they are not directly tied to hours worked or service rendered, they are typically paid frequently, regularly, and as fungible cash. And it would make little sense for Congress to require employers to provide a bona fide plan to exclude health care benefits under § 7(e)(4) if employers could simply pay cash toward the same purpose and claim exclusion. *Id.*

Moreover, the Final Rule is consistent with the DOL's 20-year position on the topic. The DOL's 20% threshold has been promulgated nationally since the issuance of the 2003 Opinion Letter. While the Ninth Circuit declined to defer to the Opinion Letter in 2016, the Circuit did not define the "incidental" threshold.

25

*See Flores*, 824 F.3d at 903. As demonstrated by the parsing of *Flores* in Defendant's Answer, employers have subsequently misconstrued *Flores* as impliedly permitting cash payments of up to 40%. (Dkt. 18, p. 17.) In 2019, the DOL adopted the 20% threshold after consideration of this Court's *Flores* decision, as well as suggestion from commentators.

Additionally, the Final Rule implicates the DOL's substantive expertise. "Generally, agencies have a nuanced understanding of the regulations they administer." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019). Here, the DOL has extensive expertise in determining which forms of remuneration must be included in the regular rate and which are subject to the enumerated exclusions. More importantly, the DOL has substantive expertise in identifying and prohibiting artifices used to evade the FLSA's overtime protections, such as labeling certain wages to pigeonhole exceptions. The "incidental" definition is central to the exercise of this expertise, given the economic incentives of employers to shave the regular rate by providing employee wages as benefit contributions which are ultimately received as cash-in-lieu payments.

 Defendant is unable to assail the DOL's reasoning, except highlighting the rigidness of the application of any bright line threshold under circumstances involving a slight breach. However, the efficacy of this argument cannot withstand closer consideration, as the Defendant's argument would preclude application of

any bright line threshold or test by the DOL. Even if the DOL adopted Defendant's preferred 40% threshold, an employer with 40.1% cash payments could claim the threshold resulted in a harsher outcome than here where Defendant exceed the DOL's 20% threshold by as much as 27.3%. Thresholds such as this serve the salutary purpose of providing employers with clear guidance as to amount of permissible cash back and the threshold that may subject them to automatic overtime liability. Employers that can readily identify the threshold have more incentive to make sure Flexible Benefits Plan payments are primarily used to purchase health care benefits. In this way, the DOL's bright-line definition best promotes the FLSA's primary objective. By contrast, the open-ended, and nebulous definitions provide employers virtually no guidance. This Circuit should adopt the DOL's threshold because the Final Rule should minimally be granted great respect under *Skidmore* as the DOL's persuasive and reasonable interpretation of "incidental."

### 2. The District Court Erred by Determining that Direct Payments Over 20% were "Incidental."

Defendant claims that when determining the percentage of the plan received in cash, Plaintiffs' calculations are inaccurate as they reflect the pre-opt-out fee amounts. (Dkt. 18, pp. 24-25.) The question of whether the cash payments should be should be considered on a pre or post deduction basis for purposes of

determining whether they are incidental is a mixed question of fact and law that cannot be resolved on summary judgment. Accordingly, the lower court accepted Plaintiffs' calculations, finding "the dispute over methodology is here largely irrelevant, because there is no indication that Ventura's cash-in-lieu payments were more than incidental within the meaning of § 207(e)(4), *even assuming the truth of Plaintiffs' proffered numbers and granting every inference to Plaintiffs*." (1-ER-10, emphasis added.) The court then determined that cash amounts reaching over 27% in some years were incidental by relying on *In re City of Redondo Beach FLSA Litigation* Case No. 217CV09097ODWSKX, 2019 WL 6310264 (C.D. Cal., Nov. 25, 2019). Because the lower court accepted the numbers proffered by Plaintiffs as the relevant metric, this Court should determine whether the payments were incidental on the same basis, i.e. considering these same numbers in reviewing its grant of summary judgment. This Court should reverse the granting of summary judgment based on the lower court's ruling that cash payments exceeding 20% are incidental, and remand back to the lower court any remaining factual dispute over the proper determination of cash payment percentage. This mixed question can best be addressed by the lower court after consideration of this Court's ruling as to whether the opt-out fee deduction may be excluded from the regular rate and whether the deduction itself is proper.

In sum, for a number of independent reasons, the Court should consider the

numbers put forward by Plaintiff and considered by the lower court in determining if the percentage of the plan paid out in cash is more than incidental.

## III.   CONCLUSION

Based on the foregoing, the Court should reverse the district court's grant of Defendant's MSJ, order Plaintiffs' MSA be granted, and remand any remaining issues to the district court.

Date:  February 15, 2023

Respectfully Submitted,

**MASTAGNI HOLSTEDT, APC**

*/s/ David E. Mastagni*
DAVID E. MASTAGNI
TAYLOR DAVIES-MAHAFFEY
Attorneys for Appellants/Plaintiffs

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** No. 22-55663

I am the attorney or self-represented party.

**This brief contains** 6,516 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s David E. Mastagni **Date** February 15, 2023

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8** *Rev. 12/01/22*